IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

ERNEST C. WYATT, SR.,

    Plaintiff,
v.                                                          CASE NO. 5:17-cv-111-MCR-GRJ

PATRICIA LEMON-WATSON,

    Defendant.
_____/

# REPORT AND RECOMMENDATION

Plaintiff, a former inmate of the Florida Department of Corrections, is proceeding *pro se* pursuant to 42 U.S.C. § 1983.  ECF No. 5 (First Amended Complaint, hereafter "Complaint").  The Complaint stems from the medical care that Plaintiff received while he was incarcerated.  This case is now before the Court on the motion for summary judgment of Defendant Patricia Lemon-Watson, an Advanced Registered Nurse Practitioner (ARNP) who treated Plaintiff.  ECF No. 36.  Plaintiff has filed a response in opposition, ECF No. 39, and the motion for summary judgment is therefore ripe for determination.  For the reasons discussed below, it is recommended that the motion for summary judgment be granted.

## I. **PLAINTIFF'S CLAIMS**

According to the factual allegations of the First Amended Complaint, Plaintiff was diagnosed with high blood pressure (HBP) in 2007 while he was confined at Charlotte CI. Plaintiff alleges that he was prescribed Clonidine for treatment of HBP. In 2008, he was transferred to Gulf CI, where he was prescribed Clonidine from 2008 to 2013. Plaintiff alleges that Defendant[1] called him to the medical department and told him they were going to wean him off of the Clonidine. He alleges that Defendant stopped giving him Clonidine and did not prescribe any other medication for HBP. Plaintiff alleges that as a result of the lack of medication, he had a stroke in May 2014, leaving his left side paralyzed and confining him to a wheelchair. Plaintiff claims that Defendant acted with deliberate indifference to his serious medical need for HBP medication. For relief, he seeks an "injunction for protection," $25.5 million in compensatory damages, and $25.5 million in punitive damages. ECF No. 5.

In her summary judgment motion, Defendant contends that Plaintiff received appropriate medical care for his HBP, including medication, and that Plaintiff cannot establish that Defendant acted with deliberate

---

[1] Plaintiff erroneously identifies Defendant as "Dr. P. Lemond".

2

indifference in connection with his care. ECF No. 36. In support of the motion, Defendant submits her affidavit, together with relevant copies of Plaintiff's medical records documenting the treatment she provided. ECF No. 35 & 35-1.

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." *Samples on Behalf of Samples v. Atlanta,* 846 F. 2d 1328, 1330 (11th Cir. 1988).

As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987).

3

The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 785-86 (11th Cir. 2005).

Because Plaintiff is proceeding *pro se*, his pleadings are held to a less stringent standard and will be liberally construed.  *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003).  Further, for purposes of summary judgment, the Court may also consider as summary judgment evidence the factual allegations – but not the legal conclusions – contained in his verified pleadings.  *See United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys. in State of Ala.*, 941 F.2d 1428, 1444 n.35 (11th Cir. 1991); *Gordon v. Watson,* 622 F.2d 120, 123 (5th Cir. 1980); *Fowler v. S. Bell Tel. & Tel. Co.*, 343 F.2d 150, 154 (5th Cir. 1965).  Conclusory allegations based on subjective beliefs are insufficient to create a genuine issue of material fact. *See, e.g., Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

### III.  <u>DELIBERATE INDIFFERENCE</u>

The Constitution forbids prison officials from consciously ignoring the serious medical needs of prison inmates.  Such "deliberate indifference" to

an inmate's serious medical need by a state actor is cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. *See Estelle v. Gamble*, 429 U.S. 97, 104–105 (1976). To show that the prison official was deliberately indifferent, the plaintiff must prove that: (1) the prison official had a subjective knowledge of a risk of serious harm; (2) the prison official disregarded that risk; and (3) did so by conduct that is more than mere negligence. *Brown v. Johnson*, 387 F.3d 1344,1351 (11th Cir. 2004); *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (the prisoner must demonstrate that the officials' response was so inadequate as to "constitute an unnecessary and wanton infliction of pain," and was not "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law.").

Generally, an inmate who receives a medical diagnosis and care, but desires a different diagnosis or treatment, can't show deliberate indifference. *Hamm v. DeKalb County*, 774 f.2d 1567, 1575 (11th Cir. 1985); *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (quoting *Estelle*, 429 U.S. at 107) ("[A]s *Estelle* teaches, the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment is a 'classic example of a matter for

5

medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment."); *v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) (quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977) ("'[W]e disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment. Along with all other aspects of health care, this remains a question of sound professional judgment.'"); *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988) ("Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice.").

## IV.  DISCUSSION

Defendant's summary judgment evidence reflects the following. ARNP Lemon-Watson saw Plaintiff primarily for issues relating to his diabetes, for which he is insulin dependent.  On September 17, 2013, Lemon-Watson renewed all of Plaintiff's medications for one year, including Lisinopril, which she describes as a "frontline treatment for hypertension, or [HBP]."  *See* Lemon-Watson Aff. ¶ 1-3 (ECF No. 35) (citing ECF No. 35-1 at 3-4).  Lemon-Watson explains that she reviewed notes from other providers dated September 9, 2013, reflecting that

6

Plaintiff was taking Lisinopril previously. *Id*. ¶ 4 (citing ECF No. 35-1 at 1-2).

Lemon-Watson saw Plaintiff on September 25, 2013, and adjusted his insulin medications. *Id.* ¶ 5 (citing ECF No. 35-1 at 5-6).

Lemon-Watson states that by January 2014, Plaintiff was being seen by a different practitioner, and continued to be given Lisinopril, the prescription for which was good until September 17, 2014. *Id*. ¶ 6 (citing ECF No. 35-1 at 8-9). Later in January 2014, the other practitioner made clinical notes that Plaintiff was noncompliant with his medical instructions. The practitioner discontinued the Hydrochlorothiazide (HCTZ), a diuretic used to treat patients with hypertension. *Id*. (citing ECF No. 35-1 at 12). The other practitioner substituted a different diuretic, Maxide. Lemon-Watson opines that such substitution was medically proper. *Id*. (citing ECF No. 35-1 at 10). On February 11, 2014, the practitioner noted that Plaintiff continued with poor medication compliance, and prescribed Clonidine as a one-time dose. *Id*. (citing ECF No. 35-1 at 11-12).

On May 14, 2014, Plaintiff exhibited stroke symptoms and was sent to an outside hospital. *Id*. ¶ 7 (citing ECF No. 35-1 at 14-15). Plaintiff was sent to the DOC's Regional Medical Center on May 22, 2014, where he

remained until August 5, 2014.  Upon his discharge, he continued to be provided Lisinopril, and Lemon-Watson states that "Lisinopril continued to [be] part of his medication regimen more than two years after I last saw him."  *Id*. ¶ 8 (citing ECF No. 35-1 at 16-17).

Lemon-Watson concludes, based on her review of Plaintiff's records, that Plaintiff never went without HBP medication, particularly in the eight months leading up to his stroke.  She opines that "[t]herefore the lack of [HBP] medications causing the stroke is an impossibility."  *Id*. ¶ 9.

In his response in opposition to summary judgment, Plaintiff submits his affidavit stating that "I did not take and was not given Maxide."  ECF No. 39.  Plaintiff also restates the allegations of the Complaint, but provides no other argument in opposition to summary judgment.  *See id.*

Defendant does not dispute that Plaintiff's HBP was an objectively serious medical need.  The issue, then, is whether the Defendant was deliberately indifferent to that need.  Defendant's affidavit and the relevant medical records support a conclusion that Defendant was not deliberately indifferent.  As summarized above, Defendant has presented competent summary judgment evidence that she prescribed Lisinopril for Plaintiff's HBP, and Plaintiff does not dispute the assertion that Lisinopril is a

"frontline treatment" for HBP. Lisinopril was part of Plaintiff's medication regimen for the two years following Defendant's treatment of Plaintiff. Lemon-Watson Aff. ¶ 8 (citing ECF No. 35-1 at 16-17). While Plaintiff disputes that he received Maxide, the diuretic that was substituted for HCTZ by a different practitioner, he does not dispute that Lisinopril was part of the regimen prescribed by Defendant. Plaintiff points to no evidence that supports his claim that Defendant Lemon-Watson's treatment of Plaintiff with respect to his HBP caused his subsequent stroke in May 2014. *See* ECF No. 39.

Thus, even viewing the evidence in the light most favorable to Plaintiff, there is no genuine issue of material fact regarding whether Defendant was deliberately indifferent to Plaintiff's serious medical need.

## V.  RECOMMENDATION

For the foregoing reasons, it is respectfully **RECOMMENDED** that Defendant's Motion for Summary Judgment, ECF No. 36, should be **GRANTED.**

**IN CHAMBERS** this 27th day of April 2018.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

9

## **NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**